UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APRIL LOPEZ, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MATT FASANA, ILIANA RZODKIEWICZ, )<br>MAREK WISNIEWSKI, BRIAN KITTLE, )<br>and the CHICAGO BOARD OF )<br>EDUCATION, )<br>)<br>    Defendants. ) | No. 1:23-CV-15819<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

April Lopez, a former chief engineer subcontracted to work in a Chicago public school, alleges that school officials retaliated against her for exercising her right to free speech under the First Amendment. R. 35, Am Compl. ¶¶ 35–50.¹ Lopez alleges that after she expressed concern about a poster in a school hallway advertising a drag show scheduled to be shown to middle- and high-school students, she was almost immediately fired. *Id.* ¶¶ 35–46. She brings this lawsuit against school officials and the Chicago Board of Education. *Id.* ¶¶ 9–13, 35–50. The Defendants move to dismiss the claims, arguing that the school officials enjoy qualified immunity from suit and, even if they did not, that Lopez has not plausibly alleged that the Defendants retaliated

---

¹Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the civil rights claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law indemnification claim against the Board under 28 U.S.C. § 1367.

against her for engaging in protected speech. R. 47, Defs.' Mot. For the reasons explained in this Opinion, the motion is denied.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). April Lopez worked at Disney II Magnet High School as a chief engineer from October 2021 through April 2023. Am. Compl. ¶ 20. Although the school takes the name "High School," the school teaches students from Grade 7 through 12. *Id.* ¶ 7. She was not a direct employee of the Chicago Public Schools system; instead, she worked for Eco-Alpha, a subcontractor of Jones Lang LaSalle (the giant real-estate services company). *Id.* ¶¶ 14, 17–18.

During the early morning of April 28, 2023, before students arrived at school, Lopez saw a poster for a drag show for students posted in a hallway. *Id.* ¶ 21. She said to one of her colleagues, "I cannot get on board with that." *Id.* ¶ 22. Vice Principal Matt Fasana overheard the comment and "expressed anger at her point of view." *Id.* ¶ 23. Then, later that morning, Lopez approached Fasana and directly "expressed her concern over having a drag show at a school with children as young as 12." *Id.* ¶ 24.

That conversation allegedly triggered a series of reports up the command chain—all on the same day, April 28—eventually leading to Eco-Alpha terminating Lopez's employment. After Lopez's second conversation with Fasana, Fasana reported the conversation to Principal Iliana Rzdokiewicz. *Id.* ¶ 25. Then Principal Rzdokiewicz went further, outside of the high school itself, reporting the conversation

to Brian Kittle, the Lead Facilities Manager in the Chicago Public School Facilities Department. *Id.* ¶¶ 13, 26. In turn, Kittle reported the conversation to Marek Wisniewski, the Director of Facilities, Operations & Maintenance for Chicago Public Schools. *Id.* ¶¶ 12, 28. Before the end of that very same day—this is still April 28— Eco-Alpha emailed Lopez, notifying her that the company was "in receipt of a report of complaint regarding [her] interactions with a [Chicago Public School] employee on April 28, 2023," and informing her that she had been placed on an administrative leave of absence with pay. *Id.* ¶ 32.

April 28, 2023, was a Friday. On the next Monday, May 1, Eco-Alpha sent Lopez a letter announcing that she was fired and referring to Chicago Public Schools' request to remove her from the high school:

> The purpose of this letter is to inform you of your immediate termination as a Chief Engineer with Eco-Alpha Chicago, Inc. due to the reported interactions with CPS [Chicago Public School] staff at Disney II Magnet School on April 28, 2023. Eco-Alpha therefore must honor CPS's request to have your removed from this account and your termination is effective May 1, 2023.

*Id.* ¶ 33.

Lopez alleges that Fasana, Rzdokiewicz, Kittle, and Wisniewski together ensured that she would be removed from the high school and that she would not be placed at any other Chicago Public School location, all because of her comment about the poster and her conversation with Fasana. *Id.* ¶¶ 29–31. In the Amended Complaint, Lopez sues Fasana, Rzodkiewicz, Wisniewski, and Kittle, as well as the Chicago Board of Education.

3

The Defendants now move to dismiss the Amended Complaint, arguing that the individual Defendants are entitled to qualified immunity, and that, even if they are not, Lopez fails to adequately allege that they retaliated against her for engaging in First Amendment protected speech. Defs.' Mot. The Board of Education gloms on to the arguments by pointing out that if the claims against the individual Defendants fail, then the indemnification claim does too. But at the pleading phase of the case, the Amended Complaint sets the factual stage for assessing the dismissal motion. On those facts, Lopez has plausibly alleged a First Amendment retaliation claim that overcomes qualified immunity.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. First Amendment Retaliation

Lopez alleges that her termination from Eco-Alpha violated her First Amendment right to speak about matters of public importance without being retaliated against. Am. Compl. ¶¶ 35–46; R. 53, Pl.'s Resp. at 4–11. Lopez insists that she was expressing her opinion on the drag show's suitability for young students, and that she was fired for expressing that opinion. Am. Compl. ¶¶ 21–22; Pl.'s Resp. at 6–11. The Defendants contend that Lopez spoke as a government official pursuant to her official duties, so her speech was not protected by the First Amendment and consequently firing her because of the speech did not amount to retaliation. Defs.' Mot. at 5–6.

Generally speaking, government employers may not retaliate against their employees (or contractors) for exercising their right to free speech. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Bd. Of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 685 (1996) (holding that government contractors and

government employees receive the protection under the First Amendment).[3] Indeed, a "public employee does not shed [her] First Amendment rights at the steps of the government building." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 970 (7th Cir. 2001). To plausibly state a claim for First Amendment retaliation, Lopez must allege that her speech was constitutionally protected, that she suffered an adverse action or that she suffered a deprivation likely to deter free speech, and that the protected conduct was at least a motivating factor behind the adverse action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Before getting to the key question in the case—whether Lopez's speech was protected by the First Amendment—the other elements of the claim require little discussion. The parties do not meaningfully dispute the adverse-action requirement; after all, Lopez was fired. The defense also accepts (as it must at this stage of the case) that the firing was motivated by Lopez's overheard remark and expression of concern to Fasana. Defs.' Mot. at 5–6. The Defendants tersely argue that Lopez did not adequately plead that the individual Defendants were each *personally* involved with her firing. Defs.' Mot. at 8. But the allegations describing the same-day chain-of-command reports by the individual Defendants, Am. Compl. ¶¶ 25–28, and the same-day

---

[3]The parties do not dispute that Lopez is a government contractor and her claim receives the same analysis as government employees. Am. Compl. ¶¶ 14, 17–18, 20; Defs.' Mot. at 4. The parties only dispute the outcome of the analysis.

suspension plus the next-business-day firing, *id.* ¶¶ 32–33, more than adequately plead the personal conduct of each school official.

### 1. Speech by Public Employees

It is time to move on to the key question: whether Lopez adequately alleged that she engaged in constitutionally protected speech. The Defendants contend that the firing was permissible because she was speaking as a public official, and that her speech was not protected. Defs.' Mot. at 5–6. To succeed on a retaliation claim, Lopez must plausibly allege that she was speaking as a private citizen, and that the speech addressed a matter of public concern. *Davis v. City of Chicago*, 889 F.3d 842, 845 (7th Cir. 2018). If Lopez was speaking pursuant to her official duties, then she has no retaliation claim, because that kind of speech—for First Amendment purposes—is considered to be *government* speech. *See Garcetti*, 547 U.S. at 421 (holding that public-employee speech made pursuant to one's official duties is "not insulate[d] … from employer discipline"). If, on the other hand, she plausibly alleges that she was speaking as a private citizen on a matter of public concern, then the First Amendment may be implicated, and the next step of the evaluation is commonly referred to as *Pickering* balancing. *Id.* at 423. At that step, the Court engages in "a delicate balancing of the competing interests surrounding the speech and its consequences," including whether the employee's interest in her speech is outweighed by "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Id.* at 417, 423 (quoting *Pickering v. Bd. Of Ed. of Tp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)).

On the threshold requirement, Lopez plausibly alleges that she was speaking as a private citizen, not pursuant to her official duties. On this question, courts consider the context of the speech, including whether the employee engaged in speech "ordinarily within the scope" of her employment, whether the speech was pursuant to government policy or to convey a government-created message, and who was the intended target of the speech. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529–30 (2022) (cleaned up). Put another way, did Lopez's not-on-board-with-that comment and the later conversation with Fasana "ow[e their] existence," *Garcetti*, 547 U.S. at 421, to her responsibilities as the employee of a government subcontractor?

At the pleading stage, the only answer is no—and clearly so. Lopez was the chief engineer at the school. Am. Compl. ¶ 1. Nothing in the Amended Complaint suggests that a school engineer's duties include advising or opining on the substance of school programming. So Lopez's speech is *not* "ordinarily within the scope," *Kennedy*, 597 U.S. at 529 (cleaned up), of her engineer duties. Am. Compl. ¶¶ 1, 22, 24. Nor is there anything in the Amended Complaint hinting that Lopez was speaking pursuant to a school policy or seeking to convey a school-created message—instead, she expressed her *own* concern about the drag show for students as young as 12. *Id.* ¶¶ 22, 24. Nor did Lopez connect the concern with her duties, for example, by refusing to work on the set up for the drag show. *See* Pl.'s Resp. at 6–7.

As a final point on the *Garcetti* inquiry, Lopez's speech did not owe its existence to her responsibilities as a public employee. It is true that she was in the school hallway and saw the poster while she was at work. *Id.* ¶¶ 21–22. But the Supreme Court

8

has held that the test for official-duty-speech is *not* whether the speech "simply relates to public employment" or—importantly here—"concerns information learned in the course of public employment." *Lane v. Franks*, 573 U.S. 228, 239 (2014). In *Lane*, the public employee was the director of a youth-training program. *Id.* at 231–32. He conducted an audit of the program and found that a state representative was a ghost payroller, that is, was being paid as an employee of the program but not showing up for work. *Id.* at 232. The director instructed the legislator to show up for work, but she refused—so he fired her. *Id.* Eventually, the legislator was indicted for fraud and the director was subpoenaed to testify at the trial. *Id.* at 232–33. Later, the director himself was fired, and he alleged that the firing was in retaliation for this trial testimony against the former legislator. *Id.* at 234. In rejecting the government's argument that the director's testimony was speech made pursuant to official duties, the Supreme Court distinguished between speech merely about information learned during employment versus speech made *pursuant* to official duties:

> the mere fact that a citizen's speech concerns *information acquired* by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself *ordinarily within the scope* of an employee's duties, not whether it merely concerns those duties.

*Id.* at 240 (emphases added). *Lane*'s application is clear here: it matters not that Lopez learned about the drag show because she was a school engineer. Instead, the question is whether her speech was made pursuant to official duties. On the limited set of facts in the Amended Complaint, the answer is no.

9

With *Garcetti* out of the way (at least for now at the pleading stage), the next question is whether Lopez also plausibly alleges that she spoke on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, for, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). Generally, when the speech of employees relates to "any matter of political, social, or other concern to the community," then they are speaking on a matter of public concern. *Id.* at 146. Here, Lopez's comments addressed a public issue: her opinion on what kinds of shows are appropriate for children to view in a school setting addresses a topic of public debate protected by the First Amendment. Indeed, the topic literally is about what should be shown in a *public* school. It is worth adding that the answer to the public-concern-or-not question does *not* depend on the viewpoint of the speaker. Consider, for example, if the hallway announcement had publicized the cancellation of a drag show due to parental concerns, and a school engineer expressed her concern to the vice-principal about bowing to that pressure. That speech would just as much touch on a matter of public concern as Lopez's. Based on the limited facts, Lopez spoke on a matter of public concern.

### 2. *Pickering*

The final question is whether Lopez's claim survives *Pickering* balancing. The answer again is yes. Right now, confined to the facts in the Amended Complaint, the scales are tipped entirely in Lopez's favor. Her interest in expressing her opinion on what is appropriate for children to view in a school setting outweighs the needs of the

10

school in carrying out the school system's duties. *See Pickering*, 391 U.S. at 568–70. Indeed (and not surprisingly), the Amended Complaint contains no allegations at all as to what disruption, if any, was caused by Lopez's speech. Reasonable inferences must be drawn in Lopez's favor, and nothing in the pleading suggests that any students heard her remarks. The overhead comment happened before students arrived. Am. Compl. ¶ 21. The allegation on the later conversation with Fasana says nothing about anyone else being present for it. *Id.* ¶ 24. There is nothing else about how the comment or the conversation otherwise affected the school day specifically or the school's operations more generally. At this pleading stage, the *Pickering* balance is all one-sided in Lopez's favor. It is true that discovery might illuminate more about what Lopez said and more about the effect on the school. The Defendants could then renew their arguments at the summary judgment stage. For now, though, Lopez has more than plausibly alleged a claim for First Amendment retaliation.

## B. Qualified Immunity

The individual Defendants maintain that they are entitled to qualified immunity because, to their way of thinking, the allegations do not amount to a violation of a clearly established right. Defs.' Mot. at 8–9. Qualified immunity protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise their power irresponsibly and the need to shield officials from harassment,

11

distraction, and liability when they perform their duties reasonably." *Id.* To overcome the individual Defendants' qualified-immunity defense, Lopez must allege that (1) "the official violated a statutory or constitutional right" and (2) "the right was clearly established at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (cleaned up). A right is "clearly established" if the conduct is so clearly in violation of the law that every "reasonable official would understand that what [they are] doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court may decide which element to work through first; if the answer to either question is "no," the defendant official is entitled to qualified immunity. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

But qualified immunity is an affirmative defense. Though it is true that, as an immunity from suit, qualified immunity should be decided "at the earliest possible stage," *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000), the assessment of qualified immunity is still confined by pleading-stage requirements. *See Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). Those requirements include crediting the factual allegations, giving reasonable inferences to the plaintiff, and—importantly here—confining the facts to the pleadings. Indeed, generally speaking, a "plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (cleaned up).

As already explained, Lopez more than plausibly alleged that the school officials caused her to be fired because she made spoke about the drag show. *See supra*

12

Section III.A. The First Amendment has long forbidden retaliation against public employees for privately made speech on a matter of public concern. *See, e.g.*, *Kennedy*, 597 U.S. at 527–29 (discussing the *Pickering* line of cases dating back to 1968); *Davis*, 889 F.3d at 845 (applying the *Garcetti-Pickering* framework in a First Amendment retaliation case). More concretely, reasonable school officials would know that they violate the First Amendment when they fire a school engineer for expressing concern to a vice-principal about a drag show, and when the speech had *zero* impact on the school's operations. Again, the analysis is confined to the facts in the Amended Complaint, because this case is at the pleading stage. Maybe discovery will shed light on the negative effects of the speech. Based on the current set of facts, however, the allegations state a violation of clearly established First Amendment law. The Defendants, therefore, are not entitled to qualified immunity at this time.

### C. Indemnification

Lopez also alleges an indemnification claim against the Board of Education. *See* Am. Compl. ¶¶ 47–50; 745 ILCS 10/9-102 (imposing a statutory duty on local public entities to indemnify employees for actions taken in their official capacity). Because the claims against the individual school officials survive, the indemnification claim survives too.

### IV. Conclusion

The Defendants' motion to dismiss the First Amendment retaliation claim and indemnification claim, R. 47, is denied. The Defendants shall answer the Amended

13

Complaint by April 15, 2025. The parties shall confer on a discovery schedule and propose it in a joint status report due on April 18, 2025.

                                    ENTERED:

                                    s/Edmond E. Chang
                              Honorable Edmond E. Chang
                              United States District Judge

DATE: March 31, 2025